130  657
165  558

## HURLBUT v. WABASH RAILROAD COMPANY, *Appellant.*

### Division One, November 26, 1895.

1. **Railroad**: NEGLIGENCE: PLEADING.  A petition in an action, by a brakeman for personal injuries against a railroad, alleging that the side rods of a locomotive and the fastenings and journals which attached them to the drive wheels were in a dangerous and defective condition, is supported by proof that the engine was not properly aligned, the effect of which was to produce the conditions charged.

2. ——: ——: MASTER AND SERVANT.  There was a contract between defendant and another railway company by which continuous trains were run over the connected roads.  Defendant had the exclusive authority to employ and discharge trainmen and was required to furnish and repair the locomotives for both roads but they were under the control of the other road while running on its track and the men were paid by each company in proportion to the work done on the respective roads.  Plaintiff was injured on the other company's road by a defective engine.  *Held*, that plaintiff was in the service of the defendant and the latter was liable for the injury.

3. ——: ——: ——: QUESTION FOR JURY.  It was for the jury to determine whether the want of proper alignment of the engine caused the breaking of the side rod, by reason of which plaintiff was thrown from the locomotive and injured.

4. ——: ——: ——.  Defendant had a rule which instructed conductors to require brakemen to ride on the top of [the train on down grades.  The conductor directed plaintiff to ride in the locomotive because of the cold weather, where he was injured on a down grade.  *Held*, that plaintiff was not negligent.

*Appeal from Linn Circuit Court.*—Hon. W. W. Rucker, Judge.

AFFIRMED.

*F. W. Lehmann* and *Geo. S. Grover* for appellant.

(1) The plaintiff in this cause was permitted to recover upon a cause of action not stated in his petition.
Vol. 130 mo—42

*Buffington v. Railroad*, 64 Mo. 246; *Waldheir v. Railroad*, 71 Mo. 514; *Edens v. Railroad*, 72 Mo. 212; *Price v. Railroad*, 72 Mo. 414; *Ely v. Railroad*, 77 Mo. 34; *Gurley v. Railroad*, 93 Mo. 450; *Haynes v. Trenton*, 108 Mo. 132.   (2) The relation of master and servant did not exist between the plaintiff and the Wabash railroad company at the time of this accident.   McKinney on Fellow Servants, sec. 18, p. 43, and cases cited; Wood on Railroads [Minor's Ed.], 1894, sec. 388, p. 1770, and cases cited; Wood on Master and Servant [2 Ed.], sec. 424, p. 826, and cases cited; Patterson on Railway Accident Law, sec. 104, p. 103, and cases cited; *Smith v. Railroad*, 85 Mo. 418; *Roddy v. Railroad*, 104 Mo. 234; *Heizer v. Mfg Co.*, 110 Mo. 605; *Railroad v. Washington*, 43 Am. & Eng. R. R. Cases, 688; 7 Am. & Eng. Encyclopedia of Law, p. 837; 14 Am. & Eng. Encyclopedia of Law, p. 838; *Railroad v. Maryland*, 10 Am. & Eng. R. R. Cases, 792; *Zeigler v. Railroad*, 52 Conn. 543; *In re Railroad*, 54 Vt. 200; *Hitte v. Railroad*, 29 Am. & Eng. R. R. Cases, 586; *Gibson v. Railroad*, 2 Ontario, 658; *Byrnes v. Railroad*, 61 Fed. Rep. 605.   The defendants were not partners under the agreement in evidence. Authorities cited *supra; Ashby v. Shaw*, 82 Mo. 76.   (3) There might have been four causes of this accident, as shown by the plaintiff's testimony:   *First.*   The defective track.   *Second.*   The frozen ground.   *Third.*   The intensely cold weather prevailing at the time.   *Fourth.*   The alignment of the engine.   Which one of these causes produced the accident the plaintiff did not undertake to show.   This defendant was clearly not responsible for either one of the first three causes named.   In order to render it liable in this action, therefore, it was incumbent upon the plaintiff to show by his proof that the accident was caused by the improper alignment of the engine alone. Failing to do this, he should not have been permitted

to recover.   *Hudson v. Railroad*, 101 Mo. 13; *Breen v. Cooperage Co.*, 50 Mo. App. 202; *Jones v. Yeager*, 2 Dillon, 68; *Callahan v. Warne*, 40 Mo. 136; *Smith v. Railroad*, 37 Mo. 292; *Searles v. Railroad*, 101 N. Y. 661; *Taylor v. City of Yonkers*, 105 N. Y. 209; *Dobbins v. Brown*, 119 N. Y. 188; *Pierce v. Michel*, 1 Mo. App. 75.   (4) The court gave improper instructions at the plaintiff's request.   Authorities cited *supra; Ely v. Railroad*, 77 Mo. 34; *Francis v. Railroad*, 110 Mo. 387.   (5) The court refused proper instructions asked by defendant.   Authorities cited *supra*.

*C. C. Bigger* and *A. W. Mullins* for respondent.

(1) It was the duty of the defendant to have provided and furnished a locomotive engine, which pulled the train on which plaintiff was employed, properly constructed and in a reasonably safe condition for the use to which it was applied.   Wood on Master and Servant, sec. 329, p. 687; *Bowen v. Railroad*, 95 Mo. 268; *Gibson v. Railroad*, 46 Mo. 163; *Lewis v. Railroad*, 59 Mo. 495; *Siela v. Railroad*, 82 Mo. 430; *Porter v. Railroad*, 71 Mo. 66; *Gorham v. Railroad*, 113 Mo. 408; *Swadley v. Railroad*, 118 Mo. 268; *Bailey v. Railroad*, 139 N. Y. 302; *Railroad v. Daniels*, 152 U. S. 684; *Railroad v. Herbert*, 116 U. S. 642; *Hough v. Railroad*, 100 U. S. 213.   (2) And the plaintiff had the right to assume that the said engine had been properly constructed and that it was in good repair. *Lewis v. Railroad*, 59 Mo. 495; *Porter v. Railroad*, 71 Mo. 66; *Banks v. Railroad*, 40 Mo. App. 458. (3) The evidence conclusively shows, we think, that the plaintiff was in the employ of the defendant Wabash railroad company at the time of the accident.   (4) The plaintiff was not guilty of contributory negligence in riding in the cab of the engine.   The evidence shows

and the jury found that he was riding there by the direction and under the order of the conductor of the train.    (5) The instructions given by the court for the plaintiff are, we think, unexceptionable, and those given for defendant fully and strongly presented every defense made by it.    Considered all in all there is no just ground for complaint by defendant.    (Authorities *supra*.)    (6) The evidence was amply sufficient to support the verdict of the jury.    Wharton on Negligence, sec. 420; *Ireland v. Plank Road Co.*, 13 N. Y. 533; *Coontz v. Railroad*, 121 Mo. 652; *Swadley v. Railroad*, 118 Mo. 268; *Bowen v. Railroad*, 95 Mo. 268; *Banks v. Railroad*, 40 Mo. App. 458; *Bailey v. Railroad*, 139 N. Y. 302; *Lilly v. Railroad*, 107 N.. Y. 566; *Bennett v. Ins. Co.*, 39 N. W. Rep. 488; *McDermott v. Railroad*, 8 Pac. Rep. 519; *Lavigne v. Mills Co.*, 10 Atl. Rep. 62.    (7) When, however, there is any evidence entitling the party to have the case submitted to the jury, and a judgment is rendered on the verdict by the trial cout, such judgment will not be reversed upon the evidence by the appellate court.    *Gillespie v. Stone*, 43 Mo. 350; *McAfee v. Ryan*, 11 Mo. 364; *Bank v. York*, 89 Mo. 369; *Blanton v. Dold*, 109 Mo. 64; *Grove v. City of Kansas*, 75 Mo. 672; *Baum v. Fryrear*, 85 Mo. 151.

MACFARLANE, J.—The suit is to recover damages on account of personal injuries received by plaintiff while acting in the capacity of brakeman on a train, while running over the track of the Omaha & St. Louis railroad between Pattonsburg and Stanberry, in this state.    After a trial in the circuit court of Linn county a judgment was rendered in favor of plaintiff for $6,000, and defendant appealed.

At the date of the injury the defendant company owned a railroad from St. Louis, by way of Moberly and Brunswick, to Pattonsburg, and the St. Louis &

Omaha Railway Company owned a road from Pattons-
burg, by way of Stanberry, to Council Bluffs, Iowa.
At that time there was an existing agreement between
said companies, by which continuous trains were run
over these connected roads each way between St. Louis
and Council Bluffs.

Under this agreement, engines of the Wabash
company were used on the Omaha road between Pat-
tonsburg and Stanberry, for the use of which the Omaha
company paid $150 rental on each. The crews on
trains coming over the Wabash road were not changed
at Pattonsburg, but carried the trains on to Stanberry.
The same crews from Stanberry carried trains on to
Moberly and Brunswick. The men composing these
crews were employed by the Wabash company, but
while on the Omaha part of the road were under the
control and direction of that company. They were
paid by each company in proportion to the number of
miles run upon the respective roads. The Wabash
company had the sole power to employ and discharge
trainmen, but an objection to any employe by the
Omaha company was respected, and he would not be
sent over that road again. The Wabash company was
required to pay all cost of repairing engines.

In February, 1892, plaintiff was employed as a
brakeman by the defendant, and on the night of his
injury he was engaged as brakeman on a freight train
running from Stanberry to Pattonsburg. The night
was intensely cold. About two miles from Pattons-
burg, while the train was descending a long grade, the
left-hand side rod broke and struck the cab in which
plaintiff was sitting, by which he was thrown out upon
the ground and permanently injured.

Under the petition defendant was charged with
negligence in failing to provide plaintiff with reason-
ably safe, secure, and proper appliances and machinery

with which to perform the duties of his employment. The petition states "that the side rods or bars which were being used to propel the drive-wheels of the loco-motive drawing said train of cars, upon which plaintiff was employed by defendants as brakeman, were, at the time plaintiff so received said injuries, insufficient for the purpose for which they were being used, and were in a dangerous, defective, and unsafe condition, and the fastenings and journals which attached said side rods to the drive-wheels of said locomotive, commonly called 'pins,' were insufficient for such purpose, and were in a dangerous, defective and unsafe condition; that the defendants well knew of the insufficient, dan-gerous, defective, and unsafe condition of the side-rods, fastenings, journals and 'pins' of said locomotive, or by the exercise of ordinary care, prudence and fore-sight might have known of the insufficient, dangerous, defective, and unsafe condition of said appliances and machinery; that plaintiff had no knowledge of the insufficient, dangerous, defective, and unsafe condition of said machinery, appliances, and locomotive, nor could he, by the exercise of ordinary care, prudence and foresight, have ascertained the dangerous, de-fective and unsafe condition thereof."

It was charged, as cause of the accident, that the side rods which were attached to and propelled the drive wheel of the locomotive became detached from the journals, commonly called pins, and struck and crushed the car by which plaintiff was forcibly thrown to the ground.

The answer was a general denial, a plea of contrib-utory negligence, and a plea that at the time of his injury plaintiff was in the employ of the Omaha com-pany, and the accident occurred on its line of road. The reply put in issue the new matter contained in the answer.

The evidence tended to prove that the engine was not properly aligned, or, as the employes expressed it, "was out of tram," at the time of the accident, and had been for some time, and that defendant's master mechanic, whose duty it was to keep engines in repair, had notice of its condition and neglected to repair it. The evidence also tended to prove that an engine was out of tram when the center of the drive wheel and the center of the pins (or journals) were not the same, and the side rods were thereby "made long in some points and short in others," which put an unusual strain on the rod and pins, and might cause them to break.

The evidence also tended to prove that the rod, though ordinarily sufficient, might, and sometimes did, break on account of extremely cold weather, or on account of roughness of track, and that the track at the place of the accident was rough and uneven. There was no evidence tending to prove that the rod was in any manner defective in material or construction. The defect was in the want of proper alignment.

Defendant read in evidence a rule of the company contained in its time card, which, as claimed, required brakemen to be on the top of the cars while the train was descending a grade. Defendant denied knowledge or notice of the rule and testified that the conductor of the train advised him to ride on the engine.

Plaintiff was paid by the Wabash company for the mileage run on its road and by the Omaha company for the mileage on that road. He knew nothing of the agreement between the companies, except what he learned from working under it.

Instructions given and refused by the court, together with the rulings of the court in the admission and exclusion of evidence present the main legal questions involved, and need not be specially noted.

I.    It is insisted in the first place that plaintiff was permitted to recover upon a cause of action not stated in the petition.    We do not think this objection good. The allegation is that the side rods and the fastenings and journals (pins), which attached thereto the drive wheels, were insufficient, and were in a dangerous, defective, and unsafe condition.    The proof shows that the engine was not properly aligned, or was "out of tram."    The evidence tended to prove that the effect of this want of alignment was to make the rods, fastenings, and journals insufficient and dangerous.

The charge it will be noted is not only that the rods and fastenings were defective, but also that their condition was dangerous and unsafe.    When an engine is "out of tram" the evidence shows that the side rods are thereby made "long in some points and short in others" by which their condition is made unsafe and dangerous by reason of the greater strain put upon them.    While the witnesses state the defects in the engine to have been a want of proper alignment, their explanation that the condition of the rod is, in such case, made unsafe and dangerous, makes the proof support the allegations of the petition.

II.    The next error assigned is that the relation of master and servant did not exist between plaintiff and defendant at the time of the injury and that, therefore, defendant owed plaintiff no duty in respect to the condition of the engine.

There can be no doubt that the liability of defendant depends upon the relationship of the parties to each other.    To render it liable, defendant must have owed plaintiff the duty of care in respect to keeping the engine in a safe and proper condition.    This duty the master owes to his servant.    It is sometimes difficult to determine whose servant one is when performing a particular duty.    He may be the general servant

of one master and the particular servant of another, so that the general master will not be liable for the negligent act of the servant while performing duties for and under the direction of the special master. This rule is applied when a master lends or hires his servant to another, for a particular purpose and gives him entire control over the servant in respect to directing the manner in which the work in hand shall be done.

This principle is illustrated in the recent case of *Donovan v. Construction Syndicate* (1893), 1 Q. B. 629. In that case defendant contracted to furnish a firm, who were engaged in loading a ship at their wharf, a crane with one of its servants in charge of it. The servant received directions from the firm as to the working of the crane and defendants retained no control of him in respect thereto. It was held that, "though the man in charge of the crane remained the general servant of the defendants, yet, as they had parted with the power of controlling him with regard to the matter on which he was engaged, they were not liable for his negligence while so employed." This case was followed in a recent case decided by the circuit court of appeals for the sixth circuit, whose conclusion of the ruling in the *Donovan* case we have quoted above. *Byrne v. Railroad*, 61 Fed. Rep. 605.

The rule has numerous illustrations in the courts of this country, but in all cases found, or cited by counsel, the liability of the master for the negligent acts of the servant were involved. *Powell v. Construction Co.*, 88 Tenn. 698; *Miller v. Railroad*, 76 Iowa, 655; *Zeigler v. Railroad*, 52 Conn. 543; *Railroad v. State*, 58 Md. 372; *Hitte v. Railroad*, 19 Neb. 620; *Railroad v. Washington*, 86 Va. 629; *Morgan v. Smith*, 159 Mass. 570; *Brown v. Smith*, 86 Ga. 274; *Wyllie v. Palmer*, 137 N. Y. 248.

But we have here the question of the liability of

the master to a servant, not for the negligence of another servant, but for his own negligence in failing to discharge a personal duty. Under the contract of employment, and the agreement between the two companies, was it the duty of defendant, or the Omaha company, to keep the engine in proper condition while running over the road of the latter company? The liability must fall upon the one upon which the duty was imposed.

Under the contract between the two companies, and the rules adopted in carrying it out, defendant had the exclusive power of employing and discharging trainmen. It paid them for the work performed on its own line. It furnished and kept in repair the engines used in common on the two lines of road. The Omaha Company was given the sole control of the operation of the engines and of the direction of the men in charge of them while used on its road. It also paid these employees for their services performed while on its road. But it was required to use the engines and men furnished it by the Wabash Company. In their selection it had no choice.

It must be assumed that plaintiff accepted employment with knowledge of the terms of the agreement, and that he acquiesced therein. The agreement made it the duty of defendant to furnish the engines, and its servants were required to manage and operate the train under the direction of the Omaha Company.

Under authority of the cases cited the trainmen did not change masters upon passing from one road to the other. They continued to be the general servants of the Wabash Company, and merely became subject to the orders of the other company so far as was necessary to insure the safe and proper management of its business.

The interest of defendant was not only in respect

to the business done, but in the care of its engines which temporarily went into the use of the other company. It evidently desired to retain control over them so far as it could be done consistently with their use while in other hands.

Plaintiff, with the other men employed with him, was entirely dependent upon defendant to furnish a suitable engine and to keep it in proper condition, He was working for defendant in carrying out its contract with the Omaha Company, and was thereby advancing its interest. Under his employment, and the duties required of him, plaintiff did not cease to be the general servant of defendant while working on the line of road owned by the Omaha Company, and defendant owed him the duty of care in respect to keeping its engines in a safe and proper condition.

III. It is insisted in the next place that the jury could not fairly infer from the evidence that the want of proper alignment of the engine caused the breaking of the side rod; that the evidence showed four conditions that might have caused the accident, namely, uneven or defective track, frozen ground, intensely cold weather, and defective alignment; that defendant could not be held responsible for the first three of these causes; that plaintiff was bound to prove by a preponderance of the evidence that the injury was caused by reason of the defective and insufficient condition of the side rod, journals, and fastenings; that under the evidence the jury was left to mere conjecture as to which of these conditions caused the injury, and consequently the cause for which alone defendant could be held responsible, was not proven.

It is true, as contended, that a side rod may have been broken by reason any one of the conditions named, and we may agree that the result might have accrued on account of any one of the first three named condi-

tions in spite of the utmost care defendant could have used in the construction of the rods, journals, and fastenings. But we must assume that defendant anticipated the rough track, the frozen ground, and cold weather and performed its duty in using care to supply such appliances as would overcome these conditions. It was shown by the evidence that a want of alignment would put a greater strain upon these appliances than they would otherwise have to bear. In these circumstances the jury could very properly draw the inference that but for the want of alignment in the engine the appliances would have been sufficient to withstand the other conditions.

IV. Defendant read in evidence on the trial a rule which instructed conductors of freight trains to "require all of their brakemen to be on top of the train * * * while descending or ascending grades." The evidence shows that the night was intensely cold, and tends to prove that the conductor had directed plaintiff, on this occasion to ride in the cab of the engine.

Under the rule the conductor had authority to direct the plaintiff in respect to his duties in being on top of the train, and plaintiff can not be charged with contributory negligence for riding in the engine descending a grade, if he did so in obedience to the directions of the conductor. The instructions to that effect were authorized and proper.

Finding no error which should cause a reversal, the judgment is affirmed. BRACE, C. J., and BARCLAY and ROBINSON, JJ., concur.