## Clarence J. Norris v. Illinois Central R. R. Co.

1. PRACTICE—*When a Cause Should be Submitted to a Jury.*—When the circumstances under which the plaintiff acts are complicated, and the general knowledge and experience of men do not at once condemn his conduct as careless, it is plainly the duty of the court to submit the case to the jury.

2. ORDINARY CARE—*Where the Facts Are Complicated.*—Ordinary care, in a case where the facts are complicated but not disputed, is peculiarly a question of fact, to be determined by a jury, under proper instructions.

3. JURY—*When the Question of Negligence Should be Submitted.*— Where the facts are admitted. but where a difference of opinion as to the inferences that may legitimately be drawn from them, exists, the question of negligence ought to be submitted to a jury.

4. NEGLIGENCE—*Whether the Proximate Cause of an Injury.*— Whether an act, assuming it to have been negligent, is the proximate cause of an injury, is a question of fact and should be submitted to a jury.

5. FELLOW-SERVANTS—*Where the Negligence of the Master Co-operates with that of the Fellow-Servant.*—If the negligence of the master co-operates with the negligence of a fellow-servant, and so produces an injury, the servant injured may recover.

Action in Case, for personal injuries. Error to the Circuit Court of Jackson County; the Hon. FRANK K. DUNNE, Judge, presiding.

Heard in this court at the February term, 1899. Reversed and remanded.
Opinion filed March 16, 1900.

WILLIAM A. SCHWARTZ, attorney for plaintiff in error.

WILLIAM H. GREEN, attorney for defendant in error;
JAMES FENTRESS, of counsel.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of
the court.

This action was brought by plaintiff in error against
defendant in error, to recover damages for injuries received
by plaintiff, on account of a collision of two locomotives on
defendant's railroad.

The case has been tried three times; the plaintiff recov-
ered a verdict on each of the first two trials, and at the
close of the evidence in the case at the last trial, the court
instructed the jury to find the defendant not guilty.

On the return of the verdict, plaintiff's counsel asked
leave to poll the jury, which was denied, whereupon the
counsel entered his motion for a new trial, which was over-
ruled by the court and judgment was rendered on the ver-
dict against defendant for costs. To each of the rulings of
the court, the plaintiff duly excepted, and brings the record
here by writ of error for review.

Error is assigned on each of the rulings of the court,
including the rendition of the judgment, but it will be nec-
essary for us to notice but one, which questions the correct-
ness of the instruction to the jury to find the defendant not
guilty.

The sufficiency of the declaration was not questioned,
and to it the defendant interposed a plea of not guilty, on
which issue was taken.

The collision that caused the injury complained of,
occurred in the railroad yard of defendant, at Cairo, the
southern terminus of the road in this State, and on the main
line of the road. At or near the place where it occurred,
the railroad had sharp curves in it, and these curves are
described by some of the witnesses as being of the form of

the letter " S." On the east side of the main track were side tracks, on which freight cars were placed to be stored until thereafter taken out and made up in trains. The railroad yards were several miles in length, north and south.

Plaintiff was engineer of a transfer train drawn by engine 737, and ran it at night between Cairo and Mounds, a station on defendant's road about nine miles north of Cairo, transferring freight cars from one station to the other.

About 9:40 P. M., on April 6, 1894, he was at Mounds, and received an order from the yardmaster at Cairo, to return there for certain purposes. There was evidence that the order was to " come light," and to " hurry up " and to run as train No. 151, which was a regular time-card train.

There is also evidence that all crews of transfer trains, as well as all switching crews, while running or working in the yard, were subject to the orders of the yardmaster, and that he alone controlled them and had authority to discharge them. About 9:55 P. M., plaintiff received what he termed his " clearance card," and started for Cairo; his engine being headed north, he ran it backward, with only the tender and caboose car attached, and after passing one or more railroad crossings, and coming into the yard and near a curve in the road, where freight cars, standing on a side-track, shut off the view of the main track of the road, except a short distance ahead, his engine collided with engine No. 600, on the main track, which was engaged in switching cars, and he was severely injured in consequence of the collision.

The defense interposed was that plaintiff was running his train in violation of rule No. 5 of the defendant company, which he knew of and fully understood, and which is as follows:

Rule No. 5. (Under Special Instructions.) Second and inferior class trains must run carefully through the yard limits at Mounds and Cairo, expecting to find main track occupied. Cairo yard extends from passenger depot to yard limit post, one-half mile north of Bridge Junction. In case of accident, the responsibility rests with the approaching train. All trains will approach Mounds under full con-

trol. At other stations, general rules 96 to 99 inclusive, and special rule 8 will govern."

It was insisted as a further defense, that the crew of the switch train and the crew of the transfer train were fellow-servants, and that the plaintiff was not exercising ordinary care for his own safety at the time of the accident.

In regard to whether plaintiff was running in violation of the rule, there was evidence that he was not doing so, and a further answer to this contention was, that he was ordered to do so by the yardmaster, who had authority to discharge him, and whom he was bound to obey; and also that it was a custom of the yard for switching trains, when working on the main track, in an obscure place where there were curves in the track, to put out signal lights at night to warn incoming trains that cars were on the track, and that plaintiff's train would have been so warned had not the yardmaster revoked the order of the engine foreman of the switch train, who had directed one of his crew to put out a signal light, and who would have done so in ample time to have avoided the collision but for the command of the yardmaster not to do it, giving as a reason for so revoking the order, that he was going up the track and would attend to putting out the signal light himself, but omitted to do so.

In taking the case from the jury, the court below seems to have assumed that if plaintiff ran his train in violation of rule No. 5, he was guilty of contributory negligence, which caused the injury; or, if the injury was not so caused, then the negligence of the crew of the switching train in not putting out a light to warn incoming trains that the switching train was occupying the main track, was the proximate cause of the injury, and, as the crews of the two trains were fellow-servants, plaintiff could not recover. If there had been no evidence that the master itself had ordered the plaintiff to run the train in violation of the rule, and if it could be said as a matter of law, that the fault in not putting out a switch-light should be attributed to the neglect of a fellow-servant, then the assumption of the lower court

APPELLATE COURTS OF ILLINOIS.

VOL. 88.] Norris v. I. C. R. R. Co.

would have been warranted, and its action should be upheld.
As we look at the case, these are the only matters into
which inquiry need be made.

Does it rest upon the court alone, or does it rest upon the
jury, aided by instructions from the court, to make the
inquiry? The Supreme Court of Massachusetts, in Gaynor
v. Old Colony R. R. Co., 100 Mass. 208, said:

"When the circumstances under which the plaintiff acts
are complicated, and the general knowledge and experience
of men do not at once condemn his conduct as careless, it
is plainly to be submitted to the jury."

What is ordinary care in such cases, even though the facts
are undisputed, is peculiarly a question of fact, to be deter-
mined by a jury, under proper instructions. It is the judg-
ment and experience of the jury, and not of the judge, which
is to be appealed to.

Even where the facts are admitted, but where a differ-
ence of opinion as to the inferences that may legitimately
be drawn from them, exists, the question of negligence ought
to be submitted to a jury. 1 Shearman & Redfield on Neg-
ligence, (4th Ed.), Sec. 54, and cases cited in notes 1 and 2.
In the case of G. & C. U. R. R. Co. v. Yarwood, 17 Ill.
509, the facts were somewhat complicated, as they are here,
and the lower court, grouping the main facts together in
an instruction, told the jury that they did not constitute
negligence in the plaintiff, and the Supreme Court, in hold-
ing the instruction erroneous, said that if all the facts
enumerated in the instruction were found specially, without
finding that the facts did, or did not constitute negligence
" under all of the circumstances of the case, no court could
pronounce any judgment of law upon it, for want of com-
pleteness." The rule then announced has since been fol-
lowed in this State without deviation, and it would be a
waste of time to collect and cite the authorities on the
subject.

Contributory negligence as matter of law is plainly the
exception and not the rule. Beach on Contributory Negli-
gence, 2d Ed., Sec. 448.

Whether an act, assuming it to have been negligent, is

the proximate cause of an injury, is a question that should be submitted to a jury. Fent v. T. P. & W. R. R. Co., 59 Ill. 349. Shearman & Redfield on Negligence, 4th Ed., Secs. 28–55.

One Denton was the yardmaster of the Cairo freight yard, and whether his direction countermanding the order to put out the signal, or his subsequent failure to display it, was the proximate cause of the injury, we can not say as a matter of law. If it was the former, the master may be liable, since, if he was clothed with the power and authority that the evidence at least tends to show he was, he stood toward the plaintiff as vice-principal of the defendant, and so the defendant is responsible for his acts. Fraser et al. v. Shroeder, 163 Ill. 459. And if the direction countermanding the order to put out the signal was negligently given, such negligence was the negligence of the master.

Nor can it be said as a matter of law, that the plaintiff contributed to his injury by disobeying rule No. 5, since the fact that he did disobey it may be accounted for by the fact that the master gave other and different commands than those contained in the rules and time tables, and the further facts and circumstances appearing in the case, such as the direction of Denton to "hurry;" the existence of a custom to flag incoming trains; the absence of the signal; and all other attendant circumstances.

This case is unlike the case of Ill. Central R. R. Co. v. Neer, 31 Ill. App. 126, relied upon by defendant in error, as in that case, no custom to flag incoming trains, or to give notice of the position of preceding trains, was shown; but it is much like the cases of Smith v. W. St. L. & P. Ry. Co., 92 Mo. 359, and Barry v. H. & St. Jo. Ry. Co., 98 Mo. 62, where it was held that even the violation of rules can not in all cases be pronounced, as matter of law, to be such contributory negligence as will preclude a recovery.

As to the question whether the injury was caused by the omission of Denton to perform an act of a fellow-servant, when he failed to put out a signal, the evidence supports the conclusion that it may as well have been his direction not to flag, as his negligence in failing to do what he had prom-

ised, that was the proximate cause of the injury; so that, though it be admitted that Denton, in undertaking to perform the act of a fellow-servant, became the fellow-servant of plaintiff, still, if the direction not to put out the signal was also a negligent act that efficiently helped to produce the injury, there may be a recovery, since, under the case of Fraser & Chalmers v. Shroeder, *supra*, Denton's claimed negligent exercise of authority over the men under his control was the act of the defendant in error.    It is held that if the negligence of the master co-operates with the negligence of a fellow-servant, and so produces injury, the servant may recover.    Pullman Palace Car Co. v. Laack, 143 Ill. 242.    The fact that Denton stood successively representing both the relation of the master, in the authority over the men in the switch yard, and of the servant, in failing to display the signal, will not prevent the rule from operating.

We are of the opinion that the court erred in taking the case from the jury, and for this error the judgment is reversed and the cause remanded.