# PUBLIC UTILITIES COMPANY *v.* READER, ADMINISTRATRIX.

[No. 9,687. Filed February 21, 1919. Rehearing denied April 24, 1919. Transfer denied November 26, 1919.]

1. APPEAL.—*Briefs.—Propositions.—Points.*—Assignments of error unsupported by propositions or points are waived. p. 488.

2. APPEAL.—*Assignment of Error.—Constitutional Questions.*—An assignment of error that the statute upon which the complaint is based is unconstitutional, is not proper and presents no question. p. 489.

3. COURTS.—*Precedents.—Jurisdiction of Appellate Court.*—The constitutionality of the Employers' Liability Act of 1911 having been determined by the Supreme Court, that question cannot be raised in the Appellate Court, the decision of the Supreme Court being conclusive. p. 489.

4. COURTS.—*Jurisdiction.—Recognition by Party.*—It would seem that taking an appeal to the Appellate Court recognizes the settlement of constitutional questions upon any statute involved, to the extent that they have been passed upon by the Supreme Court. p. 489.

5. MASTER AND SERVANT.—*Injuries to Servant.—Jury Question.— Evidence.*—In an action for the death of a motorman, *held* that, in view of §2, Acts 1911 p. 145, §8020b Burns 1914, and there being a complication of facts and a difference of opinion as to the inferences derivable therefrom, the question of decedent's negligence was for the jury, under the principles of the common law as well as by the express provision of §7 of the act. p. 489.

6. APPEAL.—*Review.—Evidence.*—It is not the province of the Appellate Court to weigh the evidence when it was sufficient to justify the submission of the cause to the jury. p. 495.

7. NEW TRIAL.—*Correct Result.—Faulty Instructions.*—Where the verdict is right according to the principles applicable to the facts, it is not contrary to law though it may be contrary to. some instruction given, since the instruction may be wrong. p. 495.

8. APPEAL.—*Exceptions.—Sufficiency.*—An exception to the refusal to give "certain of the instructions requested" is joint and so indefinite as to present no question. p. 496.

From Posey Circuit Court; *Herdis Clements,* Judge.

Action by Matilda J. Reader, administratrix of the estate of Henry Reader, deceased, against the Public Utilities Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*W. D. Robinson, W. E. Stilwell* and *G. V. Menzies,* for appellant.

*John R. Brill, F. H. Hatfield* and *John W. Brady,* for appellee.

NICHOLS, J.—This action was brought in the Posey Circuit Court by appellee against the appellant for damages for the death of her husband, Henry Reader, resulting from the negligence of the appellant. Originally there were two paragraphs of complaint, but, before the trial, the first paragraph was dismissed. There was a demurrer to the second paragraph of the complaint, which was overruled. The appellant answered in general denial, and the cause was submitted to a jury for trial. There was a general verdict for the appellee. Interrogatories were submitted to and answered by the jury. Appellant moved the court for judgment in its favor on the answers to interrogatories notwithstanding the general verdict. This motion was overruled, to which ruling appellant excepted. After motion for a new trial, which was overruled, to which ruling appellant excepted, this appeal is prosecuted.

After general averments as to the appointment of administratrix, and the location of appellant's line of railroad, the complaint avers in substance that on September 3, 1914, appellant was operating its cars from the city of Evansville to the city of Princeton,

thereby passing Baldwin Heights station, near which point there was a switch on which cars were run to permit other cars to pass; that one of the appellant's cars being so operated was, at the time of the accident involved, being run by appellee's decedent under the direction and control of one J. C. Miller, as conductor, then in the employ of the appellant; that said conductor, J. C. Miller, was in full charge and control of the movements of said car and, under the rules and regulations of said appellant, it was the duty of said conductor to, and he did, give to said motorman the bell signals, indicating whether to go forward, back, or stop the car, which rule of said appellant both the motorman and conductor were bound to and did obey; and under the terms of employment of said decedent, as such motorman, he was required to and did conform to and obey all the bell signals and orders given him by said conductor; that said car being run by said decedent, as motorman, left Princeton, running south about six o'clock, in charge and control of said conductor; that said decedent, in obedience to an order given him by said conductor, ran said car on the switch at Baldwin Heights, for the purpose of permitting a northbound car to pass; that immediately after said northbound car passed, said conductor, by and through said bell system, negligently ordered and directed said decedent to run the car off said switch, and onto the main track, which said decedent did, and thereupon said conductor negligently ordered and directed the decedent to run the car south on the main line, which order the decedent obeyed; that a short distance south from Baldwin Heights there was an abrupt and sharp curve in the main track and an elevation, which pre-

vented the motorman approaching said curve from either north or south from seeing the car approaching in the opposite direction, and that appellee's decedent approached said curve and suddenly came in contact with a car approaching the curve from the opposite direction, which car was being operated by the defendant company; that appellee's decedent did not know of the approach of the car on account of the curve and elevation, and could not see the same in time to avoid a collision; that such collision was with great force and violence and resulted in the death of the appellee's decedent; that the appellant was guilty of negligence in giving to appellee's decedent said orders to run this car onto the main track, and thereafter forward to the south on the main track, which said negligence resulted in the collision aforesaid.

The appellant relies upon the following errors for reversal: (1) Overruling appellant's demurrer to the second paragraph of complaint; (2) overruling appellant's motion for judgment on the answers to interrogatories notwithstanding the general verdict; (3) that the statute upon which the second paragraph of the complaint is based is unconstitutional; (4) that the court erred in overruling appellant's motion for a new trial.

The first and second assignments of error are waived by appellant's failure to support either of them by its propositions or points. *Hoover* v.

1.    *Weesner* (1897), 147 Ind. 510, 45 N. E. 650, 46 N. E. 905; *Chicago, etc., R. Co.* v. *Ader* (1916), 184 Ind. 235, 110 N. E. 67; *Indianapolis Traction, etc., Co.* v. *Miller* (1913), 179 Ind. 182, 100 N. E. 449; *Kingan & Co.* v. *King* (1913), 179 Ind. 285, 100 N. E. 1044; Ewbank's Manual §188.

The third assignment is not a proper one, and presents no question. *Pittsburgh, etc., R. Co.* v. *Town of Wolcott* (1904), 162 Ind. 399, 69 N. E. 451; 2-4. *Standish* v. *Bridgewater* (1902), 159 Ind. 386, 65 N. E. 189; *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467, 80 N. E. 415. Further, the constitutionality of the Employers' Liability Act, Acts 1911 p. 145, §8020a *et seq.* Burns 1914, which is involved in the third assignment of error, has been conclusively and repeatedly established by the Supreme Court. *Standard Steel Car Co.* v. *Martinecz* (1918), 66 Ind. App. 672, 113 N. E. 244, 114 N. E. 94; *American Car, etc., Co.* v. *Williams* (1916), 63 Ind. App. 1, 113 N. E. 252; *Nordyke & Marmon Co.* v. *Hilborg* (1916), 62 Ind. App. 196, 110 N. E. 684; *Vandalia R. Co.* v. *Stillwell* (1914), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916D 258. The constitutionality of this act having been determined by the Supreme Court, such question cannot be raised in the Appellate Court. The decision is binding upon the Appellate Court, and it would seem that appellant's counsel has recognized this principle of law by taking this appeal to the Appellate Court. *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 562, 88 N. E. 939; *Blair* v. *City of Fort Wayne* (1912), 51 Ind. App. 652, 98 N. E. 736.

Under the fourth assignment of error, the appellant earnestly insists that the verdict of the jury is contrary to law, not only because the verdict is 5. not sustained by sufficient evidence, but also because it is directly contrary to law as expressly given to the jury by the court in the instructions read to the jury. Appellant insists that the evidence shows very clearly that the conductor was not in charge of the car, and that the motorman was not

bound to obey the signal of "two bells" to go forward
when given by the conductor, and that there is no
evidence in the record from which there can be any
inference drawn that the conductor was in charge of
said car, and that the said decedent was bound to obey
any order given him to start the car forward.   Appel-
lant further contends that there is no legitimate evi-
dence in the record from which it can be said that the
decedent received the signal from the conductor to
proceed southward from Baldwin Heights; and that,
unless it can be shown that there is evidence to show
that the decedent was bound to obey the conductor,
and that in consequence of his obedience his death
resulted, the appellee cannot recover under any con-
struction to be given to the statute involved.

It appears from the evidence that the decedent, at
the time of the accident, was operating car No. 17,
extra, as a motorman, leaving Princeton at 6:01 p. m.,
and running south to Baldwin Heights, at which
place, by the dispatcher's orders, the car was to take
the siding to meet extra No. 205, running north; that
a copy of this order was furnished to both the dece-
dent and the conductor; that while said car was on
the switch, a car passed going north.   It is not dis-
closed whether this was a regular car or an extra,
but it is disclosed by the evidence that the regular
car was due to pass Baldwin Heights going north at
6:12 p. m.   Immediately after said car passed, the
decedent tapped his gong twice, to which the con-
ductor answered with two bells.   Thereupon the dece-
dent pulled his car out onto the main line, and a Mr.
Gray, who was a conductor and an employe of the
defendant company, but a passenger and not on duty
on this car, threw the switch and lined it up with the

main line, and then got on the back step and whistled twice, after which the conductor sounded the bell twice, and the car went forward to the south. That the service performed by Mr. Gray was the duty of the conductor, and was not the decedent's duty. That the conductor heard the whistle by Mr. Gray, and understood that the sounding of the gong by the motorman meant that everything was all right and that he wanted to go ahead and answered by ringing two bells. That these two bells were in response to the sounding of the gong. That it was the rule and custom for the conductor to sound the bell twice to notify the motorman that he was on the car. The conductor testified that if Gray had not been there he would have thrown the switch, and that the signal that he gave the motorman was the usual and ordinary signal that whoever threw the switch was back on the car, and that it had nothing to do with the movement of the car. The conductor further testified that a Mr. Parker, the general superintendent of appellant company, while at Princeton, where the orders aforesaid were issued, held up two fingers and said, "Remember! Boys, you meet two cars at Baldwin Heights," and that Mr. Parker and the conductor and the decedent were all there together when Mr. Parker made the statement. It appears by the evidence that the decedent had in his possession and control a book of rules of the appellant, which contains the following:

> (10)   "In addition to the rules contained in the book, bulletins and time tables will be issued from time to time and that such special instructions, when issued by proper authority, shall be fully observed while in effect, whether they con-

flict with these rules or not. That employees must be conversant with and obey the rules and special instructions.

(4) "Employees must provide themselves with a copy of the current time table and always have the same with them when on duty.

(8) "Each employee is expected to and required to look after and be responsible for his own safety as well as to exercise care and avoid injury to others.

(99) "Motormen must not start their trains without first receiving proper signals from the conductor, and never start without the signal being correct."

The only starting signal mentioned in the rules, as far as is disclosed by the evidence, is the signal of "two bells." This signal is provided for in the book of rules as follows:

"Conductor, to Motorman—

"Signal,—Two Bells or whistle cord signals.

"Indication,—When train is standing, start forward."

(155) "Regular trains in either direction will meet trains as per time table unless otherwise ordered by the proper authority.

(157) "Extra trains are inferior to regular trains of whatever class, and have no rights except those conferred upon them by train orders.

(169) "Extra trains must not be run without orders from the dispatcher.

(210) "For the movement of trains not provided for by the time table, train orders will be

issued by authority over the signature of the Superintendent or other designated authority.

(228) "When one train reaches the meeting point and finds that the train or trains to be met have not arrived, the conductor shall immediately call the dispatcher's office for orders."

In addition to these rules the following special rules appear upon the time table, to wit:

"(9) When approaching a siding at which trains are to meet or pass, the conductor will remind the motorman that it is a siding for his train to meet or pass another train by giving the proper stop signal; and the train will not pass the meeting or passing point until the proper signal has been given by the conductor.

"(23) After any train clears the main track and the switches are properly set and locked for the main track, the conductor must step to the side of the track opposite the switch stand and remain there until the opposing train is met or passed."

Mr. Parker, appellant's general superintendent, testified that, when the car is standing, two bells is the conductor's signal to the motorman to go ahead if all is well in front, that it is not in the printed rules in these words, but that is the understanding. He further testified that rule No. 2 provides:

"In addition to these rules bulletin orders and time tables will be issued from time to time containing such special instructions as necessity demands. These special instructions, when issued by proper authority, shall be fully observed while

in effect, whether in conflict with these rules or not.''

The rule book contains all the rules of the company, except the special rules on the time card, and the latter rules supersede those in the book.

When the car on which appellant's decedent was motorman reached Baldwin Heights the cars to be met at that point had not arrived, and it was then. the duty of the conductor, under rule No. 228, immediately to call the dispatcher's office for orders. This duty, in the absence of evidence to the contrary, the conductor is presumed to have performed. The jury may reasonably have inferred that when the decedent received the proceed signal from the conductor, as provided in special rule No. 9, he believed, and had reason to believe, that the conductor had called the dispatcher and had received an order to proceed.

Section 2 of the Employers' Liability Act, *supra,* upon which the second paragraph of the complaint is based, provides, with other things, that no such injured employe shall be held to have been guilty of negligence or contributory negligence where the injury complained of resulted from such employe's obedience or conformity to an order or direction of. the employer or of any employe to whose orders or directions he was under obligation to conform or obey, although such order or direction was a deviation from other rules, orders, or directions previously made by such employer.

In view of this statutory provision, and with the complication of facts as appears from the brief statement thereof above, and where there is a difference of opinion as to the inferences that may be drawn

from them, the question whether the appellee's decedent was negligent was properly submitted to the jury. We reach this conclusion, as a principle of common law, without reference to §7 of the Employers' Liability Act, *supra,* which provides that all questions of negligence or contributory negligence shall be questions of fact for the jury to decide. *Chicago, etc., R. Co.* v. *Hamerick* (1912), 50 Ind. App. 425, 96 N. E. 649; *Norris* v. *Illinois Central R. Co.* (1899), 88 Ill. App. 614; *Carson* v. *Southern Railway* (1903), 68 S. C. 55, 46 S. E. 525; *Cincinnati, etc., R. Co.* v. *Lang, Admx.* (1889), 118 Ind. 579, 21 N. E. 317; *Hurlbut* v. *Wabash R. Co.* (1895), 130 Mo. 657, 31 S. W. 1051.

6. The cause having been properly submitted to the jury, and the jury having weighed the evidence, which is not the province of this court, we hold that the verdict is sustained by sufficient evidence.

7. Appellant contends that the verdict is contrary to law, because it is directly contrary to the law as expressly given to the jury by the court, in the instructions read to the jury; and that a verdict rendered contrary to the law, as ascertained in an instruction to the jury by the court, will be set aside, whether the instruction is right or wrong. A number of authorities are cited to sustain this proposition, none of which are from Indiana. This is certainly not the law of this state. It has been expressly so held that it is not, with the statement that the instructions themselves may be wrong, and that if the jury nevertheless decide the case right according to the principles applicable to the facts, the verdict cannot be said to be contrary to law. *Pittsburgh, etc., R. Co.* v. *Ives* (1895), 12 Ind. App. 602, 40 N. E. 923.

Appellant predicates error upon the refusal of the court to give instructions numbered respectively, 2, 11, 13, 14, 17 and 26, of the twenty-six instruc-

8.     tions tendered by the appellant. The following is a copy of the exception by the appellant to the court's refusal to give its instructions, as the same appears in its brief: "Appellant excepted to the refusal of the court to give certain of the instructions requested by the appellant." Such an exception is joint, and is so indefinite as to present no question. *Doehring* v. *Hollenbeck* (1915), 58 Ind. App. 80, 104 N. E. 770.

The judgment is affirmed.