## BUD GATES, INC. v. JACKSON

[No. 1168A199. Filed June 2, 1970.]

*Arthur R. Robinson, Albert W. Ewbank,* of Indianapolis, for appellant.

*Sidney Mishkin, Bamberger & Feibleman,* of counsel, of Indianapolis, for appellee.

SULLIVAN, J.—Plaintiff, Bud Gates, Inc. (hereinafter referred to as the corporation) appeals from an adverse judgment entered by Marion County Municipal Court, Room 7.

Plaintiff asserted a claim for the sum of $1,388.28 against a former employee, Paul Jackson, which sum was allegedly drawn in advance by Jackson in anticipation of a bonus for the year 1965. Jackson asserted by way of counterclaim a claim against the Corporation for a 1965 bonus in the sum of $2,600.00, representing the difference between $10,400 in salary paid him in 1965 and $13,000 which plaintiff Corporation allegedly agreed to pay Jackson for that year. The court tried the cause without jury and found in favor of plaintiff Corporation on its complaint for $1,388.28 and in favor of Jackson on his counterclaim for $2,600.00. The court accordingly ordered that Jackson recover $1,211.72, together with costs.

Appellant's brief urges alternative grounds for reversal as follows: (1) The evidence was insufficient to support the determination of the trial court that an agreement was made by which Jackson was to be paid $13,000 for 1956. (2) Assuming the existence of such agreement is was "unusual" and "extra-ordinary" and beyond the authority of the Corporation's president, Bernard Gates, and therefore ultra vires.

## SUFFICIENCY OF THE EVIDENCE

It is too well settled to require citation of authority, that the weight of the evidence and the credibility of the witnesses are to be determined by the trier of fact, not a reviewing tribunal. Under the circumstances here presented, the sole function of this court is to determine whether there is sufficient evidence to support the decision of the Municipal Court. *Terrel* v. *Irelan & Baum, Inc.,* (1968), 143 Ind. App. 302, 240 N. E. 2d 95.

The evidence most favorable to the appellee, Jackson, is as follows:

Jackson was employed as the chief accountant and office manager of Bud Gates, Inc., in the summer of 1958 by Bernard T. Gates, president of the corporation (hereinafter referred

to as Gates). Jackson at that time had had substantial experience as an accountant in the retail automobile business. Gates and Jackson orally agreed that Jackson would be paid a salary of $150 per week, together with a bonus of 5% of the first $25,000 of net profit to the corporation before taxes, and 10% of such profits in excess of $25,000.

Jackson's duties initially included the preparation of financial statements and budget forecasts, the handling of the corporation's accounting records and the supervision of personnel. He became vice-president of the corporation in 1961, at which time his duties were enlarged to include dealings with the Chevrolet Motor Division of General Motors Corporation, with banks and with other lending institutions.

Gates testified that he gave Jackson complete authority to run the office and to write checks; that Jackson had much responsibility, handled millions of dollars for the corporation and was a satisfactory employee.

Jackson earned $7,800 in salary for 1959. His bonus for that year took the form of a credit against the purchase price of a residence purchased from Gates. Jackson earned $7,800 in salary in 1960, but received no bonus because the corporation made no profit for that year. Jackson received no increase in salary after he was made a vice-president in 1961. Gates did authorize Jackson at that time to draw sums of money in anticipation of the year-end bonus, and sums so drawn were deducted from the bonuses paid Jackson and were credited against amounts which Jackson had drawn in advance. In 1961, Jackson received $7,800 in salary and an $800 bonus. In 1962, his salary was again $7,800 and he received a bonus of $4,135.31. In 1963, his salary was $9,100, an increase of $25 per week. That year he also received a bonus of $7,054.13, for a total of $16,154.13. 1964 was not a profitable year for the corporation. Jackson earned $9,275 in salary for that year at a rate of $175 per week. In June of 1965, it was determined that the corporation would make no profit for 1964. At that

time Jackson discussed with Gates the amount of compensation for 1964. Gates agreed to pay Jackson a $2,500 bonus for 1964, despite the absence of corporate profits for that year. This bonus was paid Jackson on July 21, 1965, increasing his total earnings for 1964 to $11,775.

Jackson testified that after the bonus for 1964 was agreed upon, he realized that he had earned approximately $200 less for that year than he had for 1963. He became concerned about his compensation arrangement because he felt too much of his income was dependent upon bonus, and bonus in turn was dependent on the corporation's ability to earn a net profit. He discussed his concern with Gates on approximately the 1st of July of 1965, as follows:

"A. I said to Mr. Gates that in view of the manner in which we had had to compute a bonus for 1964 on an arbitrary basis, in view of this, that I felt like my compensation plan should be changed from 1965 and forward, that there should be a change in my overall compensation plan.

Q. What sort of change did you suggest, if any?

A. I suggested to Mr. Gates, I asked him if he did not agree that someone with my responsibility in the corporation, the added duties that I had taken on over seven years et cetera, that a minimum income figure or minimum salary figure of Thirteen Thousand Dollars ($13,-000) was equitable and he agreed that I should be worth this much, regardless, of what kind of year we had.

Q. Did you propose any particular way that that money be paid you?

A. Yes, I proposed that my salary be set at Two Hundred and Fifty Dollars ($250.00) a week which multiplies to Thirteen Thousand Dollars ($13,000.00).

Q. What was Mr. Gates response, if any?

A. His response was that he, essentially, he agreed with that, however, in view of an extremely short cash position in the company, he would prefer that the weekly payment be Two Hundred and Twenty-Five Dollars ($225.00) a week, with the balance of the

Thirteen Thousand Dollars ($13,000.00) to be made up at the end of the year.

Q. And, how was the balance, the difference between your salary for '65 for Thirteen (13,000), to be made up at the end of the year, what form did that make up take?

A. It would then take the form of a bonus.

Q. And, that's what Mr. Gates said to you?

A. Yes."

Jackson also testified that he would not have remained in the corporation's employ if Gates had not assured him that he would be paid $13,000 for 1965.

Jackson earned $10,400 in salary for 1965. He severed the employment relationship in March of 1966, and asserted his claim for the $2,600 allegedly due him.

We think it clear that there is sufficient evidence as hereinbefore set forth to support a conclusion that the respective parties entered into a binding bonus arrangement whereby appellee Jackson would receive in salary and bonus not less than $13,000.00 for 1965. Accordingly, we hold that the judgment of the trial court is supported by substantial evidence of probative value.

## APPELLANT'S CONTENTION THAT BONUS CONTRACT WAS ULTRA VIRES IS WAIVED

In its brief appellant corporation contends that even assuming the existence of a bonus arrangment, which we have heretofore found substantiated by sufficient evidence, such agreement was ultra vires for the reason that Gates did not have authority to bind the corporation to such contract. Such contention is not properly before us.

The corporation's motion for new trial filed below is as follows:

"The plaintiff in the above entitled cause moves the court for a new trial thereof for the following reasons, to-wit:

"(1)   The decision of the court is not sustained by sufficient evidence.

"(2)   The decision of the court is contrary to law."

The Memorandum attached to said motion for new trial makes no mention of a contention or a position by the corporation that its president lacked authority to bind the corporation to a bonus contract with Mr. Jackson. Such argument is necessarily therefore waived.

This appeal was fully briefed prior to the effective date of the new Indiana Rules of Civil Procedure. Under the old rules it was well established that the purpose of a motion for new trial was to advise the trial judge of alleged errors and to permit that judge to correct said errors, if any. *Hoosier Fence Co., Inc.* v. *Cohen* (1965), 137 Ind. App. 468, 210 N. E. 2d 54. Rule 1-14B of the Supreme Court provided that a party filing a motion for new trial on the grounds that the verdict or decision is not sustained by sufficient evidence or is contrary to law waives any ground not specified in the memorandum that must accompany such motion. *Anderson* v. *Irwin* (1968), 142 Ind. App. 302, 234 N. E. 2d 276; *Christlieb* v. *Overmyer* (1969), 145 Ind. App. 688, 252 N. E. 2d 257. The new Rules have made no change in this regard other than in nomenclature.

We accordingly hold that appellant's contention concerning the ultra vires nature of the bonus contract between the parties hereto was waived.

Judgment of the trial court is hereby affirmed and the costs hereof are assessed against appellant.

Lowdermilk, C.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 691.