310 N.E.2d 877 (1974)
BOARD OF COMMISSIONERS OF THE COUNTY OF HOWARD, Indiana, Plaintiff-Appellant,
v.
KOKOMO CITY PLAN COMMISSION, Defendant-Appellee.
No. 2-473A88.
Court of Appeals of Indiana, Second District.
May 20, 1974.
Rehearing Denied July 23, 1974.
*878 Daniel J. Gamble, Fred G. Osborn, Kokomo, Baker & Daniels, Karl J. Stipher, Robert J. Bremer, Indianapolis, for plaintiff-appellant.
Kenneth L. Andrews, Andrews & Dechert, Robert S. Whitehead, Whitehead & Newell, Kokomo, for defendant-appellee.
SULLIVAN, Presiding Judge.
This appeal by the Howard County Board of Commissioners (County) involves the constitutionality of a proviso of IC 1971, XX-X-X-XX, Ind. Ann. Stat. § 53-734 (Burns 1973 Supp.) which authorizes a city in counties of less than 84,000 population to exercise land use planning jurisdiction over unincorporated areas within two miles of the corporate limits of the city without consent of the county commissioners.[1] Such consent is required in counties over 84,000 in population if such county has a county plan commission *879 operating under a county master plan and ordinance covering the unincorporated areas of the county. Howard County, having a population of less than 84,000, has a County Plan Commission so acting. The entire section in question is as follows:
"Adoption of master plan by city plan commission for limited area outside  Filing of limits of area with county recorder  Effect of master county plan.  A city plan commission shall adopt a master plan for the development of the city and of such contiguous unincorporated area outside the corporate limits of the city as, in the judgment of the commission, bears reasonable relation to the development of the city as it shall designate. Except as limited by the political subdivision boundaries of other cities or states, or by the boundaries of unincorporated areas subject to the jurisdiction of other city plan commissions, such designated contiguous unincorporated area may include all or any part of the area within two (2) miles from the corporate limits of the city, and, in the event that the corporate limits of the city or the boundaries of such contiguous unincorporated area within two (2) miles from the corporate limits of the city shall include any part of the public waters or shore line of any lake which lies wholly within the state of Indiana, may also include all or any part of the public waters and shore line of such lake, together with all or any part of an area within two thousand five hundred (2,500) feet from said shore line.
Before exercising the rights, powers and duties conferred upon it by this chapter (§§ 53-701 - 53-795 [IC 1971, 18-7-5-1 to XX-X-X-XX]) with respect to such designated contiguous unincorporated area, a city plan commission shall file a description or map defining the limits of such designated contiguous unincorporated area with the county recorder of the county in which the city is located, and, as such designated contiguous unincorporated area may be altered from time to time, shall file with such county recorder a revised description or map defining the limits thereof. In the event that any part of the contiguous unincorporated area within the potential jurisdiction of any city plan commission shall be within the potential jurisdiction of any other city plan commission, such city plan commission may exercise territorial jurisdiction over such proportion of the area within the potential jurisdiction of both city plan commissions, as the area within the corporate limits of such city bears to the total area within the corporate limits of both cities, and within such boundaries, in accordance with the foregoing and inclosing an area reasonably compact and regular in shape, as the city plan commission first acting shall designate.
In the event that the county in which any city is located shall now or hereafter have established a county plan commission and such county plan commission shall have prepared, and the board of county commissioners of such county shall have adopted, in accordance with and as provided in this chapter, a master plan and ordinance covering the unincorporated areas of such county, the city plan commission of such city may exercise territorial jurisdiction over the area within the corporate limits of such city only: Provided however, That any city included within this section may continue or establish jurisdiction of the contiguous unincorporated area as described in this section if authorized by ordinance of the board of county commissioners. Such ordinance may be initiated by petition duly signed and presented to the county auditor by: (1) not less than fifty (50) property owners residing in the area involved in the petition; or
(2) The county plan commission; or
(3) The city plan commission; or by action of the board of county commissioners. Prior to final action on the ordinance by the board of county commissioners, the county plan commission shall *880 hold an advertised public hearing as required for other actions of the commission under this chapter. Upon the passage of the ordinance by the board of county commissioners and the subsequent acceptance of jurisdiction by the city plan commission, the city plan commission shall exercise the same rights, powers and duties conferred elsewhere in this section exclusively with respect to such contiguous unincorporated area. The jurisdiction of a city plan commission as authorized above may be terminated by ordinance at the discretion of the board of county commissioners, but only if the county has adopted a master plan for such area which is as comprehensive in scope and subject-matter as that in effect by city ordinance: Provided further, That any city located in a county with a population of less than 84,000 according to the last decennial census may, at any time, after filing notice with the county recorder and with the county plan commission (which plan commission shall have adopted in accordance with this chapter, a master plan and ordinance covering the unincorporated areas of such county), exercise or reject territorial jurisdiction over all or part of the area within two (2) miles of the corporate limits of such city and within the county in which it is located, whether or not such city plan commission has exercised such jurisdiction at any previous time. Within sixty (60) days after receipt of such notice, said county plan commission and the board of county commissioners shall cause the county master plan and ordinance to be revised to reflect such decision of the city plan commission exercising the option provided for in this proviso."
It is the desire of the appellant to have the proviso which is applicable to counties of less than 84,000 population interpreted so as to require the consent of Board of County Commissioners. They do so in light of the well established principle which calls for a constitutional construction and application of a statute if at all possible. To engraft upon the proviso under consideration, the condition advocated by appellant, however, is to totally emasculate that proviso and to subvert the obvious intent of the Legislature. We must, therefore, necessarily construe appellant's argument as a head-on challenge to the constitutionality of the proviso.
We are not here called upon to divine legislative intent. That intent is made patently clear by the legislative history of the proviso. Prior to enactment of Public Law 271 by the 1971 General Assembly, cities could establish extra-territorial jurisdiction only "if authorized by ordinance of the board of county commissioners." The 1971 amendment permitted cities to exercise extra-territorial planning jurisdiction in all counties in which there was no county plan commission and in counties of less than 84,000 whether or not there was such a county plan commission operating under a master plan and zoning ordinance but in all such instances, the consent of the board of county commissioners was still required. In 1972, by Public Law 141, the General Assembly placed the provision in its present language. This chronology leads to the inescapable conclusion that the legislature consciously and specifically intended to permit the exercise of extra-territorial planning and zoning jurisdiction in all counties of less than 84,000 population whether or not the county board of commissioners approved. Our sole concern is then with the constitutionality of that studied and intentional enactment of the General Assembly.
Appellant asserts that the provision denies equal protection of the laws in that it has its adverse application only to counties of less than 84,000 population.[2] According to appellant upon appeal, therefore, it is a "local or special law" prohibited by Article 4 § 23 of the Indiana Constitution.[3]

*881 I

ARTICLE 4 SECTION 23 CONSTITUTIONALITY OF STATUTE IS PROPERLY BEFORE COURT UPON APPEAL
By reason of the dissenting opinion of my colleague, it is deemed appropriate to make comment upon the sufficiency of appellant's Motion to Correct Errors with respect to preservation of the constitutional issue hereinafter treated.
Initially, it should be noted that plaintiff-appellant's complaint for injunction alleged that the statute in question violated the equal protection and due process clauses of the United States Constitution. More specifically, plaintiff-appellant asserted the statute:
"... discriminates between residents of Howard County as respects notice, public hearing, due process and equal protection as opposed to those citizens of the State of Indiana residing in counties of a population of excess of 84,000."
Thereafter, both parties produced extensive argument and counterargument of the equal protection issue in their memorandums in support of their respective motions for summary judgment. We note particularly the following specifics in appellee's argument before the trial court:
"In response to the Plaintiffs' argument that this Legislation discriminates against counties with population over eighty-four thousand (84,000), the Defendants reply as follows:
It has long been the practice in Indiana and other states for the State Legislature to classify local units of government in order to draft legislation to meet local needs. For instance, there are numerous classes of Indiana Cities. Legislation in recent years has been drafted to authorize merit police systems for a particular city. Perhaps more directly on point is the State Legislation authorizing metropolitan plan commissions for counties with a population of between ninety thousand (90,000) and one hundred seventy-five thousand (175,000) containing a city with a population of sixty-five thousand (65,000). The latter example may apply to only two (2) or three (3) cities and counties in the state.
In light of the foregoing examples of the principle that the State Legislature may classify cities and counties for Legislative purposes it is significant to note that in the Legislation in question approximately 79 counties are eligible to participate. It is clear then that a broad class of counties and cities are eligible under the Legislation in question."
The court's ruling on the motions implicitly found the statute constitutionally valid although the ruling contained no specific reference to either party's constitutional arguments.
Similarly, both parties have extensively and incisively presented arguments on the specific Art. 4 constitutional issue in their briefs here. Recognition should be taken of the fact that appellees have, at no time, argued or alleged that lack of specificity in setting forth the constitutional issue in the Motion to Correct Error should limit our consideration thereof. In any event, lack of such specificity is not jurisdictional. We should not, therefore, sua sponte deny review of those issues fairly presented and argued if such issues were unmistakably before the trial court.
The purpose and effect of Indiana's motion to correct errors is essentially twofold. First, the motion serves to present alleged error to the trial court, and, thus, enable the court, which is already familiar with all aspects of the proceedings, to rectify its own errors, if any. Bennett v. State (1973) Ind. App., 304 N.E.2d 827; Bud Gates, Inc. v. Jackson (1970) 147 Ind. App. 123, 258 N.E.2d 691.
Second, the motion serves as a presentation of alleged errors to the appellate court. In this respect, the motion is a prerequisite *882 to appeal and frames issues which were presented to the trial court and upon which the appeal is based. Bud Gates, Inc. v. Jackson, supra; Wood v. Gassensmith (1968) 143 Ind. App. 550, 241 N.E.2d 884.
A party cannot urge one point in trial court and another on appeal. Such new issues or points raised on appeal are deemed not subject to review. Indiana State Board of Tax Commissioners v. Pappas (1973) Ind. App., 302 N.E.2d 858; Farley v. Farley (1973) Ind. App., 300 N.E.2d 375 (transfer denied).
No appeal should be dismissed, however, if, in fact, the appealing party has presented his motion with reasonable particularity of the issues. The essential point here is that appellant adequately apprise the trial and appellate courts and opposing counsel of the complained error. This notification aspect is especially salient where, as in the case before us, only one substantial contention was placed before the trial court. Therefore, our holding can be understood to allow reasonable specification of errors where the trial court's holding clearly and adequately embraces the issues from which the alleged errors arose.
This standard does not allow bald or completely unsubstantiated claims to receive appellate review. Garcia v. Slabaugh (1974) Ind. App., 308 N.E.2d 714; Bennett v. State, supra; Saloom v. Holder (1973) Ind. App., 304 N.E.2d 217; Farley v. Farley, supra. Rather, this court should proceed to the merits if, after reading the motion and accompanying briefs, the issues are sufficiently articulated so that an informed decision can be rendered. Prudential Insurance Co. v. Winans (1974) Ind. App., 308 N.E.2d 727; Indiana Department of State Revenue v. Frank Purcell Walnut Lumber Co. (1972) Ind. App., 282 N.E.2d 336.
As previously stated, an appellant cannot assert new issues on appeal which were not presented to the trial court. City of Indianapolis v. Wynn (1959) 239 Ind. 567, 159 N.E.2d 572 (on rehearing); Indiana State Board of Tax Commissioners v. Pappas, supra; Farley v. Farley, supra. However, appellate courts may entertain new or novel arguments, approaches or theories of the underlying issue. Danes v. Automobile Underwriters, Inc. (1974) Ind. App., 307 N.E.2d 902; Bielat v. Folta (1967) 141 Ind. App. 452, 229 N.E.2d 474 (Opinion on rehearing). In Bielat, the court cogently stated:
"Appellees' argument and decisions relied on relating to a departure from the `theory of the case' have no application here. The rule that parties will be held to trial court theories by the appellate tribunal does not mean that no new position may be taken, or that new arguments may not be adduced; all that it means is that substantive questions independent in character and not within the issues or not presented to the trial court shall not be first made upon appeal. Questions within the issues and before the trial court are before the appellee [appellate] court, and new arguments and authorities may with strict priority be brought forward."
141 Ind. App. at 454, 229 N.E.2d at 475.
In Danes this court was confronted with a public policy argument seeking to void an insurance claim compromise settlement. The appellants, however, cited the pertinent statute for the first time in their appellate brief. The court, relying upon Bielat, stated:
"The public policy argument as made below is therefore properly before us for as stated in Russell v. Johnson (1943), 220 Ind. 649, 665, 46 N.E.2d 219, 225:
`[T]he public policy of this State will be determined from a consideration of its constitution, its statutes ...' (Emphasis supplied)

*883 Thus, the only omission by trial counsel was citation to the actual statute. It is clear that:
`... the courts of a state will take judicial notice of its own public statutes and that it is accordingly unnecessary to plead them or to set out the contents or substance thereof.' Chicago & Calumet District Transit Co., Inc. v. Stravatzakes (1959), 129 Ind. App. 337, 344, 156 N.E.2d 902, 905.
While failure to cite the controlling statute cannot be said to be sound trial practice, it does not constitute waiver of a contention within the factual framework of the litigation as argued below." 307 N.E.2d at 905-906.
In the case before us, appellant has steadfastly maintained the unconstitutionality of the statute throughout the proceeding below. As we noted in Danes, the statute there in question was necessarily before the trial court by virtue of judicial notice. In the case at bar, the Indiana Constitution and its Art. 4, § 23, were likewise before the trial court at both the summary judgment hearing and the ruling on the motion to correct errors. Furthermore, pursuant to the principle enunciated in the Bielat case, we may take cognizance of the argument refinements concerning the appellant's assertion of unconstitutionality.
As a final, yet equally compelling, point, we reiterate the time-honored rubric that appellate courts, by their nature and purpose, prefer to decide issues on the merits. West v. Indiana Insurance Co. (1969), 253 Ind. 1, 247 N.E.2d 90; Wylie v. Meyers (1958) 238 Ind. 385, 150 N.E.2d 887; Miller v. Ortman (1956) 235 Ind. 641, 136 N.E.2d 17; Willsey v. Hartman (1971) Ind. App., 269 N.E.2d 172; Fairwood Bluffs Conservancy District v. Imel (1970) 146 Ind. App. 352, 255 N.E.2d 674.
For the reasons elucidated above, we proceed to the substance of this case.

II

MUNICIPAL PLANNING AND ZONING AS VALID DELEGATION OF STATE POLICE POWER MAY BE EXERCISED EXTRA-TERRITORIALLY WITHOUT CONSENT OF PERSONS AFFECTED
Quoting Art. 1, § 1 of the Indiana Constitution, appellant-county correctly affirms that "all power is inherent in the People." The County then proceeds in its argument to rely upon a concept of "self government." The primary thrust of appellant's "self government" argument is directed to the fact that the municipal planning authority may, by the proviso questioned, exercise authority extra-territorially without the consent of those affected by such action. In essence, it appears to be a dispute between the urban and rural elements of the County.
In 1947, by Act of the General Assembly, the State authorized municipalities to create plan commissions "in order to promote the orderly development of its governmental units and environs". The Act (Acts 1947, Ch. 174, § 1) stated as its objective:
"... encourage local units of government to improve the present health, safety, convenience, and welfare of their citizens and to plan for the future development of their communities to the end that highway systems be carefully planned, that new community centers grow only with adequate highway, utility, educational, and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas provide healthy surroundings for family life; and that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds."
Section 32 of the Act (IC 1971 XX-X-X-XX, Ind. Ann. Stat. § 53-732 [Burns 1964]) required *884 such plan commissions to prepare a Master Plan "[s]o as to assure the promotion of public health, safety, morals, convenience, order, or the general welfare and for the sake of efficiency and economy in the process of development, ..." It is thus apparent that the exercise of authority by a plan commission involves the health, safety and welfare of the citizens and is thus within the purview of the state's police powers, properly delegable to a municipality, Krimendahl v. Common Council of City of Noblesville (1971) 256 Ind. 191, 267 N.E.2d 547. See also Board of Zoning Appeals v. Koehler (1963) 244 Ind. 504, 194 N.E.2d 49; Town of Homecroft v. Macbeth (1958) 238 Ind. 57, 148 N.E.2d 563; Mogilner v. Metropolitan Plan Comm'n (1957) 236 Ind. 298, 140 N.E.2d 220.
Ind. Ann. Stat. § 48-1407 (Burns 1963), since superceded, authorized cities to exercise extra-territorial jurisdiction for various purposes. Insofar as pertinent, that authority was replaced by IC 1971 18-1-1.5-1, Ind. Ann. Stat. § 48-1451 (Burns 1973 Supp.) enacted in 1971, which provides:
"All cities shall have the powers set forth in subsequent sections of this chapter [City authorization relative to planning and zoning is contained in IC 18-1-1.5-10, Ind. Ann. Stat. § 48-1460 (Burns 1973 Supp.)], which powers may be exercised within their territorial limits, and in such additional areas as may be specified herein, to the extent deemed ... to be necessary or desirable in the public interest of its inhabitants."
It may be argued that by its failure to specifically authorize extra-territorial jurisdiction, IC 1971 18-1-1.5-10, Ind.Ann. Stat. § 48-1460 (Burns 1973 Supp.) which confers planning and zoning authority upon cities, when read together with the general powers provision of § 48-1451, precludes such extra-territorial jurisdiction.[4] Such however, requires a total disregard of the very specific authorization of § 53-734, here in question. The statutes must be read in pari materia. Thus § 48-1451 as made specific by § 48-1460 may not be construed so as to render § 53-734 meaningless or without effect.
In any event the prior authorization contained in § 48-1407 has been judicially sanctioned, and it was early held in this State that a municipal corporation may exercise police power beyond its territorial limits when such authority has been conferred by the legislature. Jordan v. City of Evansville (1904) 163 Ind. 512, 72 N.E. 544; Emerich v. City of Indianapolis (1889) 118 Ind. 279, 20 N.E. 795; Lutz v. City of Crawfordsville (1887) 109 Ind. 466, 10 N.E. 411.
Even State ex rel. Geake v. Fox (1902) 158 Ind. 126, 63 N.E. 19, relied upon by appellant in support of the "self government" theory of its argument, recognized that a municipality might properly exercise police power jurisdiction outside of its geographical boundaries if such power has been duly conferred by the state:
"For the preservation of the public health, for the prevention of disease and epidemics, each inhabitant has an interest in the proper drainage of lands, and in the suppression of all unsanitary conditions, whether rural or urban, and without regard for territorial boundaries, and the right to look to the state for protection against these evils so far as the same may be legally afforded. Likewise the enforcement of the state's criminal and revenue laws are of equal importance to all. In all these, and kindred things, the setting up of corporation *885 lines forms no barrier to the strong arm of the state in safeguarding every public interest." 158 Ind. at 136, 63 N.E. at 23 (Emphasis supplied)
More specifically, Indiana has recognized that urban problems requiring solution through long range planning and zoning do not confine themselves to the territorial boundaries of the municipal corporation. In Bd. of Comm'rs of Vanderburgh County v. Sanders (1940) 218 Ind. 43, 54-55, 30 N.E.2d 713, 717, the Court observed:
"It is reasonable to assume that the Legislature in passing this act took cognizance of the well-known fact that rural areas, adjacent to cities, were rapidly developing as community centers. Tracts of land were being platted into divisions and sub-divisions for the purposes of meeting the demand of many urban inhabitants to move to and live in a less congested community. This movement from the thickly populated areas of our cities to the suburban districts created problems somewhat akin to the city problems such as sanitation, sewage disposal, plumbing, regulation of buildings and businesses of various kinds."
The solution to such problems as are sought to be resolved by long range land use planning requires a non-combative approach by all interested citizens for as noted in 6 McQuillen, Municipal Corporations § 24.34 (3d ed. 1969 Rev.):
"The mere concentration of population creates a degree of interdependence between the individual and the community as a whole."
As stated in City of New Albany v. New Albany St. R. Co. (1909) 172 Ind. 487, 87 N.E. 1084:
"The only restriction [on the police power of a city] is that it must be necessary to the protection or promotion of some public interest or welfare, and the mode of its exercise reasonably calculated to accomplish the end sought, with due regard for the fundamental rights of the citizen guaranteed by the Constitution." 172 Ind. at 490, 87 N.E. at 1085.
Thus, by its very nature, the police power vested in a municipality may not be made dependent upon the consent of those affected by it. 6 McQuillen, Municipal Corporations § 24.09; Weber v. City Council of Thousand Oaks (1973) 9 Cal.3d 950, 109 Cal. Rptr. 553, 513 P.2d 601 at 605. See Cohn v. State ex rel. Nester (1971) 257 Ind. 87, 272 N.E.2d 452.
Municipal planning is not a matter of parochial local interest. All citizens of the state have a vital stake in urban planning and development. There is therefore a very practical rationale for permitting extra-territorial action by a municipality in matters of planning and development. To reason otherwise is to permit a minority in crucial outlying areas to thwart orderly, responsible and necessary utilization of community resources. In this connection the "community" is not, nor should it be, limited by the geographical or political boundaries of the municipality.
We accordingly hold that the concept of self government as espoused by appellant does not constitutionally require the consent of those affected by extra-territorial municipal planning.

III

THE LEGISLATIVE CLASSIFICATION BASED SOLELY UPON COUNTY POPULATION DOES NOT BEAR RATIONAL RELATIONSHIP TO THE PURPOSE OF THE PROVISO AND IS VIOLATIVE OF ARTICLE 4 SECTION 23 OF THE STATE CONSTITUTION
Quite a different constitutional question is presented by the legislative determination of § 53-734 to require consent by county boards of commissioners in counties of over 84,000 in population, while denying such veto power over municipal planning *886 and zoning regulation to counties of less than 84,000 population.
Our consideration of the issue thus posed must be in the light of the following well established rules as collected and quoted in Bailey v. Evansville-Vanderburgh Airport Authority Dist. (1960) 240 Ind. 401, 406-407, 166 N.E.2d 520, 523:
"(1) A statute is presumptively valid and will not be overthrown as unconstitutional if it can be sustained on any reasonable basis; (2) It is the duty of courts to uphold Acts of the Legislature if it is possible to do so within rules of law, and where there is a doubt as to the constitutionality of a statute, it must be upheld; and (3) the burden is on the party attacking the constitutionality of the statute to establish the invalidating facts; and its invalidity must be clearly shown."
It is further well established that while legislative classifications may be based upon population alone, such classification must bear a rational relationship to the subject matter and be based upon justifiable distinctions in the context of the legislative goal sought to be obtained. Dortch v. Lugar (1971) 255 Ind. 545, 266 N.E.2d 25. The reason for the classification must inhere in the subject matter. R.R. Comm. v. Grand Trunk Western R.R. Co. (1913) 179 Ind. 255, 100 N.E. 852. If the rational relationship does not exist or if the populational distinction drawn does not justifiably bear upon the legislative goal, the enactment is prohibited by Art. 4, § 23 of the State Constitution which requires that "where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."
In Caesar v. DeVault (1957) 236 Ind. 487, 493-494, 141 N.E.2d 338, 340, the Court drew extensively from School City of Rushville v. Hayes (1904) 162 Ind. 193, 70 N.E. 134 and Bullock v. Robison (1911) 176 Ind. 198, 93 N.E. 998 in enunciating the criteria for determining the legitimacy of population classifications and quoted respectively therefrom as follows:
"But the classification must be natural and reasonable, and not arbitrary. It must be founded upon real and substantial differences in the local situation and necessities of the class of cities and towns to which it applies. Where such a classification excludes from its operation cities and towns differing in no material particular from those included in a class, the statute can not be upheld."
and
"More is required than a mere designation by such characteristics as will serve to classify; the characteristics serving as a basis must be of such substantial nature as to mark the objects so designated as particularly requiring exclusive legislation. There must be a substantial distinction, having reference to the subject-matter of the proposed legislation, between the objects or places embraced in the enactment, and the objects or places excluded."
Appropriate to our consideration is Heckler v. Conter (1933) 206 Ind. 376, 187 N.E. 878 wherein a statute abolishing the office of City Treasurer in cities of the second and fourth classes within counties of a population between 250,000 and 400,000 and transferring that function to the County Treasurer was held unconstitutional. Our Supreme Court there overruled a line of earlier cases which had held that the determination whether a general law could or could not be made applicable was within the sole judgment and discretion of the legislature. In striking down the statute, appropos of the issue before us, the Heckler court observed that a general law was there possible in that it could have been made applicable to all cities in similar circumstance and held that the fact that the cities are located in a county within a particular population range "cannot possibly account for any difference in situation in respect to the need of a city treasurer *887 or the propriety of the county treasurer acting as such." 206 Ind. at 383, 187 N.E. at 880.
On the other hand, is Dortch v. Lugar, supra, which involved in part a constitutional challenge to the Indianapolis Unigov statute on the basis that it unreasonably excluded any city or town within the county which had in excess of 5,000 population and thus violated Art. 4, § 23 which prohibits local or special laws.
The Court in Dortch acknowledged that the classification appeared at first glance to be somewhat arbitrary in that it was based solely upon population but said:
"... it would nevertheless seem evident that such a classification might reasonably have been premised on a justifiable distinction inherent in the subject matter under consideration, namely that cities and towns with a population in excess of five thousand persons are of sufficient size to provide efficient, viable and responsible local government as an independent unit within the consolidated city."
255 Ind. at 559, 266 N.E.2d at 35.
The Court then distinguished Heckler v. Conter, supra  and properly so  holding that the classification of excluded and included cities and towns bore a rational and legitimate relationship to the legislative goal of providing consolidated city and county government.
The legislative classification before us presupposes some legal justification for requiring consent by some county governments but not others when faced with planning and zoning incursion by municipalities of the same relative size, e.g., the city of Bloomington (42,890) requires county consent before it may exercise extra-territorial planning jurisdiction in Monroe County (84,849) whereas Kokomo (44,042) with greater population and Marion (39,607) with less population than Bloomington may do so without county consent since those respective counties have less than 84,000 population  Howard County (83,198) and Grant County (83,955). This example demonstrates the absence of rational relationship between the classification and the subject matter thereof.[5] The need for long range planning is more closely related to the size of the city which is to exercise the planning authority than to the size of the county in which the municipality is located. The relevance of consent by counties is therefore even more remote to the population classification here considered, than if it were tied to city population.
The rational relationship present in the Dortch case is absent here. In the case before us, we are not speaking of counties which are wholly excluded from extra-territorial municipal planning. Rather we are concerned with whether the state may grant veto power over such activity to some counties, while withholding it from others, solely upon the basis of county population. The determinative factor which activates the proviso is population and the purpose of such proviso is not merely to permit extra-territorial planning, but rather *888 to permit such without requiring county consent. The proviso here attacked is therefore more closely akin to the statute struck down in Heckler than that which was upheld in Dortch.
As we have noted in Part II, the legislative provision for consent by Boards of County Commissioners in counties of 84,000 population or more is not constitutionally required. Had it desired to do so, the General Assembly could have constitutionally authorized extra-territorial planning and zoning jurisdiction for all cities without the necessity of consent by the non-residents to be affected. The fact remains, however, that our legislature did not choose to follow the latter course. Rather it gave to some citizens through their duly elected Boards of County Commissioners, the right to avoid municipal planning by withholding county consent but denied that right to other citizens. Such classification is unjustifiably discriminatory. It does not in our view bear relevance to the object and purpose of the legislative provision. Once again, we speak not of the broad legislative objective which permits municipal planning within a reasonable area outside corporate limits (an objective with which population density does constitutionally equate). Rather we speak of the clear and limited purpose of the proviso in issue, i.e., an exception to the consent requirement for all counties except those having less than 84,000 in population.
Appellee has not here defended the classification with respect to consent as a subject of legislative classification separate and distinct from the general legislative purpose to permit extra-territorial planning authority by municipalities. Nor do we conceive of facts within our judicial knowledge, contemporaneous conditions and situations of people, existing state policy or matters of common knowledge, to which we may resort as supportive of the classification. Perry Civil Twp. v. Indpls. Power and Light Co. (1943) 222 Ind. 84 at 91-92, 51 N.E.2d 371; Evansville-Vanderburgh Levee Authority District v. Kamp (1960) 240 Ind. 659 at 662, 168 N.E.2d 208 quoting Bally v. Guilford Twp. School Corp. (1954) 234 Ind. 273, 126 N.E.2d 13.
A population classification which discriminates and delineates between counties having populations greater and lesser than 84,000 has no rational relationship to the subject matter, i.e., consent, insofar as we have been made aware. The classification cannot therefore stand. Caesar v. DeVault, supra; Perry Civil Twp. v. Indpls. Power and Light Co., supra; Heckler v. Counter, supra. See City of Fort Wayne v. Maplewood Park Utilities, Inc. (1968) 143 Ind. App. 507, 241 N.E.2d 805; Fairchild v. Schanke (1953) 232 Ind. 480, 113 N.E.2d 159; Hayes v. Taxpayers Research Ass'n (1947) 225 Ind. 242, 72 N.E.2d 658; Ettinger v. Studevent (1942) 219 Ind. 406, 38 N.E.2d 1000; McErlain v. Taylor (1934) 207 Ind. 240, 192 N.E. 260. See also Elias v. City of Tulsa (1965 Okl.) 408 P.2d 517; Kass v. Lewin (1958 Fla.) 104 So.2d 572; Woolley v. Mears (1910) 226 Mo. 41, 125 S.W. 1112. Compare Weber v. City Council of Thousand Oaks, supra, which with respect to "rational classification" is distinguishable in that the two separate California statutes there considered had different legislative purposes.
While as we have noted, the state might constitutionally permit extra-territorial planning and development regulation by municipalities without the consent of the residents affected, the state may not, solely by virtue of county population classification, confer a "veto power" upon some counties, yet withhold such power from other counties. McErlain v. Taylor, supra. See also Heckler v. Conter, supra, wherein state sought to abolish legislatively created municipal offices only in certain cities.
In view of our determination upon this issue, it is not necessary to consider other assertions of unconstitutionality or illegality.
Since the proviso in question is unconstitutional as violative of Art. 4, § 23 of the *889 Indiana Constitution, the judgment below is hereby reversed and the cause is remanded with instructions to deny the Motion for Summary Judgment filed by defendant Kokomo City Plan Commission and to grant plaintiff's Motion for Summary Judgment upon its complaint for injunction.
WHITE, J., concurs.
BUCHANAN, J., dissents with opinion.
BUCHANAN, Judge (dissenting).
I respectfully dissent from the majority opinion on these grounds:
1. The constitutional question (Art. 4, § 23) on which the majority relies to invalidate the statute in question was not specifically raised in the Appellant's Motion to Correct Errors.
2. Had the constitutional issue been properly raised, the population-based classification created by the statute bears some rational relationship to its subject matter and therefore is not violative of Art. 4, § 23, of the Indiana Constitution prohibiting special laws.

GROUND 1
In its Motion to Correct Errors, Appellant Board of Commissioners of the County of Howard, Indiana, sets forth three grounds, and no more, to support its claim that the statute in question is unconstitutional:
"(a) Said statute does not provide for notice of public hearing:
"(b) Said statute is uncertain, vague and indefinite; and,
"(c) Said statute amounts to an unconstitutional delegation of legislative functions to an administrative body." (Emphasis supplied.)
The Motion is not strengthened by a memorandum in support thereof stating "the facts and grounds upon which the errors are based." Rule TR. 59(B) requires such a statement but does not specifically mandate the filing of a separate memorandum.
Apart from these three general allegations, none of which even remotely relate to the subject of a general law being violative of Art. 4, § 23 because of an unreasonable classification, the Motion is silent as to why Appellant believed the statute to be invalid.
Recently cases interpreting Rule TR. 59(B) and (G) have required all legal issues an appellant asserts on appeal must be stated with specificity in the appellant's motion to correct errors, and when not so specified will be deemed waived on appeal. See, Spivey v. State, (1971) Ind., 274 N.E.2d 227; Saloom v. Holder, (1973) Ind. App., 304 N.E.2d 217 (specificity as to constitutional grounds); State v. Hladik, (1973) Ind. App., 302 N.E.2d 544; Weingart v. State, (1973) Ind. App., 301 N.E.2d 222; Daben Realty Co. v. Stewart, (1972) Ind. App., 290 N.E.2d 809; Matthew v. State, (1972) Ind. App., 289 N.E.2d 336; Ostric v. St. Mary's College, (1972) Ind. App., 288 N.E.2d 565.
As Justice Hunter succinctly stated in Spivey v. State, supra:
"[3] There are other issues attempted to be advanced for the first time by the defendant in his brief that were not specifically set out in his motion to correct errors before the trial court."
* * * * * *
"Thus we hold that any such issues asserted to be errors not stated with specificity in motion to correct errors are deemed waived on appeal."
There seems to be general agreement on this point. The comments of the Civil Code Study Commission as to Rule TR. 59(B) state:
"In requiring the issues upon which error is based to be stated in the motion, *890 this rule departs only in degree from prior Indiana practice which was aimed at informing the judge of the error relied upon. Hoosier Fence Co. v. Cohen, 6 Ind.Dec. 244 [137 Ind. App. 468], 210 N.E.2d 54 (Ind. App. 1965)
To the same effect is Harvey and Townsend, Indiana Practice, page 128:
"As noted, Rule 59(B) requires a specific statement of alleged errors `accompanied by a statement of the facts and grounds upon which the errors are based.' As such, the Rule, by its language, incorporates the gist [of] prior case law and of former Supreme Court Rule 1-14(B) and continues to require that the trial court be given information sufficient to make an accurate determination of the validity of an allegation of error."
For an excellent treatment of the specificity required by Supreme Court Rule 1-14B see Southport Board of Zoning Appeals et al. v. Southside Ready Mix Concrete, Inc., et al. (1961) 242 Ind. 133, 176 N.E.2d 112.
The requirement of specificity relates not only to the alleged "error" itself, but also to the "grounds" in support of the claimed error. Such grounds must be stated in the motion to correct errors with enough particularity that the trial court may be made aware of the exact legal issue involved. On this point this District, in a recent unanimous decision, stated:
"While the motion to correct errors serves as the complaint on appeal, its primary purpose is to afford the trial court the opportunity to rectify errors it has committed. Bud Gates, Inc. v. Jackson (1970), 147 Ind. App. 123, 258 N.E.2d 691. Without being informed by a specific statement of the facts and grounds on which the claimed error is based, the trial judge cannot rectify his errors, if any. Were it otherwise, an appellant could propel himself into this or the Supreme Court by general statements of claimed errors, detailed at leisure after his motion to correct errors is overruled. Such a gigantic bootstrap by an appellant is precisely what the rules of appellate procedure are designed to avoid." (Emphasis supplied.) Bennett v. State, (1973) Ind. App., 304 N.E.2d 827, 829.
The need for an explicit statement of both the error itself and the grounds therefor has been particularly emphasized if constitutional issues are involved. Courts in this state have uniformly held that a simple allegation that a statute is unconstitutional is not enough. Whatever constitutional grounds or propositions are asserted on appeal must also be definitively presented to the trial court by directing its attention to the particular constitutional provisions alleged to have been violated. Peters v. Casey, (1964) 245 Ind. 666, 201 N.E.2d 496; City of Indianapolis v. Wynn, (1959) 239 Ind. 567, 159 N.E.2d 572 (on rehearing); Prunk v. Indianapolis Redevelopment Comm'n, (1950) 228 Ind. 579, 93 N.E.2d 171; Luttrell v. State, (1932) 204 Ind. 116, 183 N.E. 318; Edenharter v. Connor, (1916) 185 Ind. 643, 114 N.E. 212; Levy v. State, (1903) 161 Ind. 251, 68 N.E. 172; Saloom v. Holder, supra; Indiana State Board of Tax Commissioners v. Pappas, (1973) Ind. App., 302 N.E.2d 858; Public Utilities Co. v. Reader, (1919) 71 Ind. App. 485, 122 N.E. 26; Cook v. State, (1901) 26 Ind. App. 278, 59 N.E. 489; 1 I.L.E. Appeals § 91 at 585.
There is no hint, no whisper, no subtle suggestion to inform this or the trial court that the constitutional question raised in this Motion to Correct Errors is anything other than "an unconstitutional delegation of legislative functions to an administrative body."
Where is there any indication that "said statute" is not a general and uniform law and therefore unconstitutional as violative of Art. 4, § 23 of the Indiana Constitution? The two questions can not be equated. They are different animals.
If the specificity required by Rule TR. 59(B) and (G) means anything, the distinction *891 between these two separate and unrelated constitutional questions must be observed. Otherwise the keystone of the arch of appellate review in this state has been destroyed. The motion to correct errors no longer serves as the complaint on appeal and as a means of informing the trial court of the grounds relied on for a new trial.
Must we hereafter search the record, as the majority has done, to seek and find some constitutional question other than the one raised in the motion to correct errors?
If this be true, the whole edifice of appellate review, like the walls of Jericho, will come tumbling down on our judicial heads.
Liberal interpretation of the trial and appellate rules does not compel us to ignore their plain meaning.

GROUND 2
Even had Appellant Howard County Board of Commissioners properly presented the question of the constitutionality of the statute in question, the majority erred in declaring it unconstitutional.
As I interpret the majority opinion, it declares unconstitutional a legislative classification as being unjustifiably discriminatory because it lodges a veto power over city extra-territorial land jurisdiction in the county commissioners of the more densely populated counties and denies that same veto power to boards of county commissioners in the lesser populated counties. No Indiana authority supports this position.
This problem needs to be analyzed in context. The legislature has passed a statute which provides that in counties having a population of less than 84,000 a city plan commission may exercise jurisdiction over the unincorporated areas within two miles of the corporate limits of that city without the consent of the county commissioners. If the county has a population in excess of 84,000, then the county commissioners may exercise a veto power over the city's right of control within the specified area. The effect of such a provision is to strike a balance by requiring exercise of joint control by the two government bodies in the more populous counties. The legislature has thus created a device to give effect to the interests of both city and county residents when county population reaches a density in excess of 84,000.
According to information in the majority opinion, of the State's 92 counties 79 have a population of less than 84,000 and 13 have a population in excess of 84,000. It is this category of 13 counties having the right of veto power in their county commissioners that is found to be objectionable.
In enacting this statute, the legislative intent manifests a desire that the planning and zoning function should be shared by the city and the county at a point when a county's population reached 84,000.
Must it necessarily be concluded that placing veto power only in the larger 13 counties bears no reasonable relationship to the objective of city and county planning?
Is the legislature's solution of a legislative classification based on consent of the larger counties a justifiable distinction?
On numerous occasions, Indiana courts have recognized the validity of legislation which classifies upon the basis of population, even a classification consisting of only one city, or a classification in a narrow field. Dortch v. Lugar, (1971) 255 Ind. 545, 266 N.E.2d 25; Evansville-Vanderburgh Levee Authority District v. Kamp, (1960) 240 Ind. 659, 168 N.E.2d 208; Bally v. Guilford Township School Corp., (1955) 234 Ind. 273, 126 N.E.2d 13 (on rehearing).
This is so even though the classification may at first glance seem arbitrary. As our Supreme Court stated in Evansville-Vanderburgh *892 Levee Authority District v. Kamp, supra:
"There are many cases in Indiana which hold that population is a valid basis for classification. This is particularly true with reference to legislation pertaining to governmental organization and operation, since the size of the governmental unit has an important bearing on how its operation shall be performed, as well as its efficiency. In all classifications made by population there is always some element of arbitrariness. Yet the presence of such element does not make the legislation special if there still remains some relationship between such classification and the objective of the law which the legislature could have considered to exist."
Furthermore, there is a presumption of constitutionality operating in favor of this legislative classification. The legislature has a "large discretion" in classification. If some reason exists for the classification, the legislature is free to fix the dividing line at some population level in the interest of uniformity. The classification need not be scientific, consistent, logical, or exact. Peripheral inconsistencies may exist. Dortch v. Lugar, supra; Evansville-Vanderburgh Levee Authority District v. Kamp, supra; Bally v. Guilford Township School Corp., supra; State v. Griffin, (1948) 226 Ind. 279, 79 N.E.2d 537.
A category based on population which is consensual in nature is properly within the discretion of the legislature. The majority cannot pass upon the wisdom of the legislature in adopting such a classification:
"As we stated at the outset of this discussion, nevertheless, we will not interpose our opinion in place of the Legislature's as to how best they might have accomplished their objective; rather we would reflect the sentiment of the United States Supreme Court in that we will not operate as a `roadblock in the path of innovation, experiment and development among units of local government' faced with the task of dealing with immense pressures and greatly varying problems, so long as there is no manifest perversion of our constitutional provisions. See Avery v. Midland County, Texas (1968), 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45." (Emphasis supplied.) Dortch v. Lugar, supra 255 Ind. at 561, 266 N.E.2d at 36.
There is a rational relationship between the legitimate legislative goal of longrange planning for the orderly development of urban and rural areas in Indiana counties and the requirement that the more populous counties (having a population in excess of 84,000, being 13 in number) may exercise a veto power in these more densely populated areas.
Where is the "manifest perversion" of such a distinction? In what way is a line drawn so narrowly that the legislative classification appears "clearly ridiculous and arbitrary"? See, Evansville-Vanderburgh Levee Authority District v. Kamp, supra, 240 Ind. at 663, 168 N.E.2d 208.
If, as the majority concedes, the legislature could have constitutionally enacted a statute authorizing all cities to exercise extraterritorial jurisdiction in all counties without consent of the county commissioners, why can it not do a lesser thing? That lesser thing being the sharing of control in the more densely populated counties. This is a sufficient distinction upon which to base a classification. To say otherwise is to usurp the power of the legislature.
The distinction involved in a consent requirement based on a broad population category does not detract from the real and substantial differences between the 13 more populous counties and the 79 lesser populated counties.
The majority's conclusion that "[t]he need for long range planning is more closely related to the size of the city * * * than to the size of the county in which the municipality is located" (emphasis supplied) is just that ... a conclusion. *893 It has no reference to the ultimate test of whether a legislative classification has a substantial rational basis.
In summary, the statute in question creates a classification which is reasonably and naturally inherent in the subject matter, and is based upon justifiable distinctions between localities. Its provisions are broad enough to apply to all counties and cities of the state under the same circumstances, and so may not be condemned as violative of Art. 4, § 23, of our Constitution as a local or special law. Dortch v. Lugar, supra; Groves v. Board of Commissioners of Lake County, (1936) 209 Ind. 371, 199 N.E. 137.
The judgment of the trial court should be affirmed.
NOTES
[1] Appellant as plaintiff below sought to enjoin the defendant from exercising extra-territorial planning jurisdiction without first obtaining from plaintiff an ordinance of consent. The trial court entered judgment for defendant upon its Motion for Summary Judgment.
[2] Appellant makes other assertions of unconstitutionality which because of our determination need not be considered.
[3] This constitutional provision requires that "where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."
[4] Other statutory provisions which confer specific police powers contain express authorization for extraterritorial regulation, e.g., health and sanitation [IC 1971 18-1-1.5-7, Ind. Ann. Stat. § 48-1457 (Burns 1973 Supp.)], eminent domain [IC 1971 18-1-1.5-5, Ind. Ann. Stat. § 48-1455 (Burns 1973 Supp.)], dangerous or noxious activity [IC 1971 18-1-1.5-6, Ind. Ann. Stat. § 48-1456 (Burns 1973 Supp.)].
[5] While we not deem it necessary to our opinion to judicially criticize the particular line of demarcation which marks the classification here, i.e., population of 84,000, we note that such line does not appear to be a wholly natural one. The population of Indiana's counties according to the last decennial census, rises steadily from Ohio County (4,289) to Porter County (87,114) a group which includes 81 of this state's 92 counties. The next set of counties covers another steady population rise from LaPorte County (105,342) to Madison County (138,451), a group of 6 counties. The remaining 5 Indiana counties cover a wide population range from Vanderburgh County (168,772) to Marion County (792,299). Rather than distinguishing between the Ohio-Porter County and the LaPorte-Madison County groups (or the Ohio-Madison County and the Vanderburgh-Marion County sets), the proviso in question adds Monroe County (84,849) and Porter County (87,114) to the LaPorte-Marion County group, leaving Grant County (83,955) to close the more natural Ohio-Porter County set.